UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JASON BALZARINI,<br><br>Plaintiff,<br><br>v.<br><br>TOWN OF ROCKPORT,<br>MARK SCHMINK, and<br>JOHN HORVATH,<br><br>Defendants. | CIVIL ACTION NO. 17-cv-11313<br><br>**LEAVE TO FILE GRANTED<br>SEPT. 27, 2017** |

**FIRST AMENDED COMPLAINT, INJUNCTIVE RELIEF,
AND JURY DEMAND**

I. <u>Introduction</u>

1.     Plaintiff Jason Balzarini is a patrol officer in the Rockport Police Department who serves one weekend per month and two weeks per year as a staff sergeant in the Army National Guard. As a result of this service and a prior complaint he filed against the Town for violating his right to serve in the National Guard without punishment, he has been harassed repeatedly and now disciplined by the Defendants Police Lt. Mark Schmink and Police Chief John Horvath. The Defendants even harassed Balzarini's National Guard superior officers, contacting them to question whether Balzarini had appeared for service. These actions of Defendants violate the proscription against discrimination based on military service under the Uniformed Services Employment and Reemployment Rights Ace ("USERRA"), 38 U.S.C. § 4301, et seq. After Balzarini filed his initial complaint, the Defendants have taken further retaliatory actions against him by launching an internal investigation and placing him on administrative desk officer duty

assignment based on on-duty conduct that occurred over a year ago. Defendants must be enjoined from further acts of discrimination, harassment, and retaliation, and Balzarini made whole through an order of damages.

## II. Parties

2.   Plaintiff Jason Balzarini is an employee of Rockport, Massachusetts, a patrol officer of the Rockport Police Department, and a staff sergeant in the Massachusetts Army National Guard.

3.   Defendant Mark Schmink is a resident of Massachusetts and a lieutenant of the Rockport Police Department, which is a department of the Town of Rockport.

4.   Defendant John Horvath is a resident of Massachusetts and the chief of police of the Rockport Police Department, which is a department of the Town of Rockport.

5.   Defendant Town of Rockport is a duly chartered municipality within the Commonwealth of Massachusetts, which operates a police department.

## III. Facts

6.   Plaintiff Balzarini enlisted in the Army National Guard in 2002. In 2008, he earned the rank of sergeant. In 2009, he earned the rank of staff sergeant. He was deployed in active service in Afghanistan from 2012 to 2013.

7.   In 2008, Rockport appointed Balzarini as a permanent intermittent police office from a civil service certification, a non-full-time position.

8.   In February 2013, while Balzarini was on active duty, Rockport bypassed him for appointment as a permanent full-time officer in favor of a lower ranked candidate.

9. On October 17, 2013, Balzarini notified Rockport, through counsel, that the decision to bypass him violated USERRA. He specifically alleged wrongdoing by Mark Schmink.

10. Instead of filing a federal complaint, however, Balzarini appealed the bypass to the Massachusetts Civil Service Commission, which oversees civil service hiring, and filed a complaint of discrimination with the Massachusetts Commission Against Discrimination on the basis that the bypass violated M.G.L. c. 151B, § 4 because Rockport based its decision not to hire him on his military service – the fact that he was deployed at the time of the appointment.[1]

11. Schmink was closely involved in the decision to bypass Balzarini.

12. In December 2013, Rockport appointed Balzarini as a permanent full-time officer.

13. In or around January 2015, Rockport stopped paying Balzarini (and another officer who serves in the National Guard) full pay while they were on leave for National Guard training despite the Town's past practice of paying full pay during such training. Balzarini appealed the Town's action through his union.

14. As a Rockport police officer, Balzarini receives contractual overtime pay under the union contract when he fills in for another officer's scheduled shift. However, the Town automatically offsets the contractual overtime pay by any hours in the same week that Balzarini serves in the National Guard, thus decreasing his overall compensation due to his service in the National Guard.

15. Since his appointment to full-time, John Horvath and Schmink have harassed Balzarini about his attendance at National Guard training and his National Guard service in general. They have generally treated him less favorably than other officers due to his National Guard service.

---

[1] M.G.L. c. 151B, § 4 prohibits discrimination in employment based on military service or veteran status.

16. On March 4, 2016, (a Friday), Horvath issued a directive to Balzarini ordering him to provide his yearly national Guard schedule on official National Guard letterhead by the following Monday at 12 p.m., along with his most recent National Guard paystub and the name and contact number of his National Guard Commanding Officer, and National Guard location to which Balzarini reported. Balzarini was then required to provide his paystubs from the National Guard for each subsequent month he "require[d] time off" to attend training within forty-eight hours of receiving the pay-stubs.

17. There was no business justification for requesting the name and contact number of Balzarini's commanding officer, or the request for his pay-stubs on a continuing basis. These requests and the threat of discipline were solely made to harass Balzarini for his National Guard service.

18. In or around July 2016, Balzarini tweaked his back while transporting a heavy individual down a flight of stairs. He reported the injury casually, but declined medical help. Schmink and Horvath then interrogated him about whether he had any physical limitations due to his military service. They told him that he needed to report right away if there were any injuries he sustained in the military that would prevent him from doing his job. Schmink reminded Balzarini about a story he had heard of Balzarini falling out of a Humvee during his deployment. He told Balzarini: "If you can't work here, you need to tell me right now."

19. On May 3, 2017, Balzarini took a sick day. Horvath ordered him to provide a doctor's note contrary to the union contract, which only required a doctor's note after three consecutive sick days.

20. Later in May 2017, Horvath called Balzarini's National Guard commanding officer and questioned whether Balzarini was attending his training that month.

4

21. Balzarini attended his two weeks of National Guard training from June 3, through June 17, 2017.

22. On one of the first days of Balzarini's training, National Guard First Sergeant Thomas Bonner called the Department and asked for Defendant Horvath in response to his prior call. When Horvath was connected, Horvath and Schmink were together. They asked Sgt. Bonner how did they know that Balzarini was at training. They also asked Sgt. Bonner for documentation to prove that Balzarini was in attendance. They asked for the training schedule, which Balzarini had already provided the previous January. They asked Sgt. Bonner what if Balzarini was sick, and Sgt. Bonner responded that the National Guard does not have sick days.[2]

23. On or about June 21, four days after his Army National Guard training, Balzarini received written notification of possible discipline due to violations of Department rules and regulations. The notifications listed seven rules that Balzarini allegedly may have violated due to a series of emails that he had exchanged with Schmink between April 27, and May 9, 2017.

24. The next day, Horvath pulled Balzarini into his office and interrogated him for ninety minutes regarding these emails and not responding to Schmink in a timely fashion in the email exchange.

25. On July 5, 2017, Horvath issued a written reprimand to Balzaini, finding that Balzarini had violated seven Department rules and regulations. As part of the discipline, Horvath removed Balzarini from the Cape Ann Regional Response Team ("CARRT"), a prestigious SWAT team assignment, removed him from his assignment of overseeing the Department's Honor Guard, and demoted him from being Officer-In-Charge ("OIC") on his shift.

26. The CARRT assignment provides overtime pay when the team is deployed. Balzarini was required to tryout for the team and served in a leadership position.

---

[2] Balzarini was in the room with Sgt. Bonner during the conversation.

27. An OIC of a shift receives overtime pay that other patrol officers do not receive. Balzarini receives this overtime pay when he served as OIC of his shift but no longer receives it since his demotion.

28. On July 17, 2017, Balzarini initiated the present action at the United States District Court for the District of Massachusetts to pursue his statutory rights under USERRA.

29. On September 7, 2017, Balzarini was informed by Chief Horvath of an internal investigation into an on-duty incident that took place on September 4, 2016. Specifically, the investigation alleged that Balzarini "may have fired a non-department issued firearm while on duty and while responding to a call without there being a legitimate law enforcement purpose for doing so."

30. As a result of the investigation, Balzarini was placed on an administrative desk officer duty assignment pending the result of the investigation. His service weapon was taken and, as a result, his opportunity to work overtime and details was eliminated.

31. Horvath was mocking and rude as he informed Balzarini about the investigation. He stopped halfway through to ask Balzarini if he was "even paying attention."

32. Where the alleged misconduct by Balzarini took place over one year ago, the misconduct does not violate any Rockport Police Department rule or policy, law, or regulation, and the pre-investigation limitation on Balzarini's duties by Horvath is wholly unnecessary, it is clear that the investigation is in fact pretextual and, along with the limitation on Balzarini's duties, taken in retaliation for Balzarini's exercise of his right to pursue a civil action under USERRA.

33. The October 17, 2013, letter, MCAD complaint, Civil Service Commission appeal, and the instant suit are "action[s] to enforce a protection afforded [Balzarini] under"

USERRA.[3] Accordingly, the above actions of the Defendants constitute retaliation based on activity that is protected by USERRA.

34.     The above actions of the Defendants constitute discrimination based on service in the National Guard, have been done to punish Balzarini due to his National Guard service, and have caused him to lose benefits of employment due to his service in the National Guard. The actions have caused lost wages, emotional distress, and other injuries.

### COUNT I
### (USERRA – 38 U.S.C. 4301, et seq)

The actions as set forth above, including, *inter alia*, interfering with Plaintiff's ability to serve in the National Guard, creating a hostile work environment, disciplining him and removing him from advantageous work assignments for pretextual reasons, including removing his service weapon and denying him overtime opportunities and details, and denying him other benefits of employment, violate 38 U.S.C. 4311(a) and (b), causing damages.

### COUNT II
### (PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF)

Defendants must pay Balzarini his contractual overtime regardless of his National Guard service, refrain from contacting his National Guard training office except for legitimate business reasons, and refrain from further harassment of Balzarini due to his National Guard Service.

---

[3] 38 U.S.C. § 4311(b).

WHEREFORE, the Plaintiff prays this Court:

1. ORDER the Defendants to pay the Plaintiff compensatory damages for lost wages, front pay, and emotional distress;

2. ORDER the Defendants to pay punitive damages, liquidated damages, and Plaintiff's attorneys' fees and costs as allowed by law;

3. Any further relief as is just and necessary.

        Respectfully submitted,
        JASON BALZARINI
        By his attorney,

        _____Joseph Sulman_____
        Joseph L. Sulman, BBO #663635
        Law Office of Joseph L. Sulman, Esq.
        391 Totten Pond, Suite 402
        Waltham, MA 02451
        (617) 521-8600
        jsulman@sulmanlaw.com

        *Of counsel*
        Elijah Bresley, BBO #691092
        Law Office of Joseph L. Sulman
        391 Totten Pond, Suite 402
        Waltham, MA 02451
        (617) 521-8600
        ebresley@sulmanlaw.com

September 27, 2017[4]

---

[4] Despite the ECF filing date, the Court deemed that this First Amended Complaint was filed on September 27, 2017. *See* Clerk's Notes for Hearing dated Sept. 27, 2017 (ECF No. 11).